UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FANNY GUERRERO,

    Plaintiff,

          v.

BOSTON MEDICAL CENTER,

    Defendant.

Civil Action No. 18-12392-WGY

## DEFENDANT BOSTON MEDICAL CENTER'S PRETRIAL MEMORANDUM

Pursuant to Local Rule 16.5(D) and the Procedural Order issued by this Court (Doc. 23), Defendant Boston Medical Center ("BMC") submits the following Pretrial Memorandum.[1]

**I.**    **Concise Summary Of The Evidence That Will Be Offered By BMC**

Plaintiff, Fanny Guerrero ("Plaintiff") was hired by BMC in January 2007, as a Temporary General Cleaner in the Environmental Services Group ("EVS"). At the time Plaintiff was hired, she was fifty-five (55) years old. In July, 2007, Plaintiff was transferred to a full-time General Cleaner. As a General Cleaner, BMC expected Plaintiff to perform a wide range of housekeeping duties to maintain a clean and sanitized environment throughout the hospital, including but not limited to, sweeping, mopping, vacuuming, scrubbing, polishing, dusting and preparing patient rooms for occupancy upon patient discharge or transfer, including, the sanitation of patient beds, furniture and equipment.

BMC contracts with an outside vendor, Crothall Healthcare ("Crothall"), to provide management of BMC's support services functions, including environmental services. Crothall

---

[1] Plaintiff is proceeding *pro se* and BMC understands that the Court does not require the submission of a Joint Pretrial Memorandum when one party is *pro se*.

managers provide day-to-day oversight of BMC employees performing EVS services, and work in concert with BMC's Human Resources personnel to address performance and conduct issues among the EVS employees. All EVS managers report to the Director of EVS, Mohamed Dassouli ("Director Dassouli"), a Crothall employee.

BMC is "scored" annually using a Hospital Consumer Assessment of Healthcare Providers and Systems survey ("HCAHPS"); this score is increasingly important for hospitals to maintain a market share and avoid losing reimbursements. In an effort to continue to improve its HCAHPS score relative to the environmental scoring criteria, BMC employs (through Crothall) a Patient Experience Manager. Paul Zepeda ("Mr. Zepeda") began in his position as Patient Experience Manager at BMC on July 28, 2014. Mr. Zepeda is charged with working to improve the overall patient experience, which in turn, should improve the HCAHPS score. If a patient raises a concern about the cleanliness of his/her room, Mr. Zepeda provides that information to Director Dassouli who will determine the next appropriate steps. At all relevant times, Mr. Zepeda was not a supervisor and had no authority to hire, discharge, promote, demote, or otherwise supervise or manage employees.

Crothall management standardized break times for all EVS Cleaners in approximately 2012. Ever since the standardized break times were implemented in 2012, EVS employees are required to take their breaks during pre-determined timeframes. Taking a break outside of these timeframes is considered an unauthorized break in violation of BMC's Attendance Policy, unless a Cleaner seeks approval. As circumstances arise, if a Cleaner needs to take a break at a time outside of these timeframes, she or he is expected to dialogue with their Supervisor and seek permission to do so.

Throughout Plaintiff's employment, Plaintiff's various supervisors expressed that Plaintiff's performance was not meeting expectations. Specifically, Plaintiff consistently failed to comply with BMC attendance policies, properly follow procedures for taking breaks and properly perform her cleaning duties. Over nine years, Plaintiff's supervisors (at least eight (8) different individuals) utilized progressive discipline and performance evaluations in an effort to get Plaintiff to improve her performance. Plaintiff's supervisors utilized every step of progressive discipline, with the final step before termination being a five-day suspension. In addition to the progressive discipline utilized by Plaintiff's supervisors over the years, her supervisors also identified these issues as areas in need of improvement in Plaintiff's annual reviews.

After the five-day suspension, Plaintiff yet again violated BMC policy when she was caught by Nereida Gonzalez, Assistant Director of EVS, outside of Plaintiff's assigned area, outside of her assigned break time, in a break room eating a bowl of food. BMC did not terminate Plaintiff's employment. Rather, BMC negotiated a Last Chance Agreement with Plaintiff's Union, which provided that should Plaintiff "violate any of BMC's Policies with regard to attendance, conduct or performance, this will lead to immediate termination and such termination will not be subject to the grievance and arbitration provisions of the CBA." Plaintiff signed off on the Last Chance Agreement. However, Plaintiff failed to take advantage of her last chance and she again violated BMC policy, again by taking an unauthorized extended break.

On December 5, 2016, Plaintiff's then-supervisor Ginica Chidumije reported to Director Dassouli and Ms. Gonzalez that Ms. Chidumije and Mr. Zepeda witnessed Plaintiff taking another unauthorized break. Specifically, Plaintiff returned late from a Union raffle event. Based on Ms. Chidumije's report, Ms. Gonzalez conducted an investigative meeting with Plaintiff, Ms. Chidumije and AFSCME on December 9, 2016. After the meeting, Plaintiff admitted to Ms. Gonzalez that she had won the raffle, so she stayed to receive her prize and was late returning.

Based on the investigative meeting, and Plaintiff's admission, Ms. Gonzalez concluded that Plaintiff had violated the Attendance Policy and the Last Chance Agreement. Ms. Gonzalez advised Director Dassouli, who then, in conjunction with Human Resources, made the decision to terminate Plaintiff's employment as of December 15, 2016.

## II.   Facts Established By Pleadings, Admissions, Or Stipulation

BMC maintains that there are no material facts in dispute and that Plaintiff lacks admissible evidence on essential elements of her legal claims, as set forth in BMC's Motion for Summary Judgment.

## III.   Contested Issues Of Fact

As set forth in BMC's Motion for Summary Judgment and Statement of Undisputed Facts, BMC maintains that there are no material facts in dispute.

## IV.   Jurisdictional Questions.

None.

## V.   Questions Raised By Pending Motions.

BMC's Motion for Summary Judgment as to all counts of the Complaint and BMC's Motion to Continue Trial Date are currently pending before the Court.

## VI.   Issues of Law, Including Evidentiary Questions

Issues of law and evidentiary questions are set forth in BMC's Motion for Summary Judgment and Reply. In addition, BMC anticipates submitting one or more motions *in limine* depending on the contested factual issues and evidence described in Plaintiff's Pretrial Memorandum. BMC anticipates that the Court will need to address the following issues of law and evidentiary questions:

    a.   <u>Department of Unemployment Assistance Decision</u>. BMC anticipates that Plaintiff will attempt to introduce the DUA decision at trial, as she did in

        her opposition to BMC's Motion for Summary Judgment. BMC objects to the admission of this document on the grounds that it is inadmissible pursuant to M.G.L. c. 151A, § 46.

    b.    <u>Plaintiff Purported Cell Phone Record</u>. BMC anticipates that Plaintiff will also attempt to introduce one page of a purported cell phone record at trial, as she did in her opposition to BMC's Motion for Summary Judgment. BMC objects to the admission of this document on the grounds that it is incomplete and unauthenticated in violation of the Federal Rule of Evidence 901.

**VII.** **Requested Amendments To The Pleadings**

None.

**VIII.** **Additional Matters To Aid In The Disposition Of The Action**

BMC submits that this case is ripe for entry of summary judgment in its favor on all remaining counts of the Complaint. Allowance of BMC's Motion for Summary Judgment would dispose of the case without the need for a trial.

**IX.** **Probable Length of Trial**

BMC estimates that it will take 3-5 days to try this case. BMC contends that this should be a bench trial as Plaintiff has waived her right to a jury trial.

**X.** **Identity of Witnesses To Be Called**

BMC expects to call the following fact witnesses to testify in person:

1. Nereida Gonzalez, c/o Jackson Lewis PC, 75 Park Plaza Boston, MA 02116.

2. Paul Zepeda, c/o Jackson Lewis PC, 75 Park Plaza Boston, MA 02116.

3. Palmira Teixeira, c/o Jackson Lewis PC, 75 Park Plaza Boston, MA 02116.

4. Ginica Chidumije, c/o Jackson Lewis PC, 75 Park Plaza Boston, MA 02116.

5. BMC representative(s) from the Labor & Employee Relations or Human Resource Department, c/o Jackson Lewis PC, 75 Park Plaza Boston, MA 02116.

6. Maria Monteiro, c/o Jackson Lewis PC, 75 Park Plaza Boston, MA 02116.

7. Plaintiff, Fanny Guerrero, 505 Columbia Road, Dorchester, MA 02125.

In addition, if BMC's Motion to Continue the Trial Date is not allowed by the Court, BMC intends to offer testimony from the deposition of Mohamed Dassouli, as he is unavailable to attend trial in person on July 15.

## XI. Proposed Exhibits.

BMC reserves the right to use documents and other evidence not listed for impeachment or in response to documents submitted by Plaintiff. The fact that BMC has listed a document as a potential exhibit is not an admission by BMC of the relevance or admissibility of the document as evidence. BMC reserves its right to amend its proposed exhibits based on the exhibits proposed by Plaintiff. Depending on Plaintiff's case-in-chief, BMC may offer the following exhibits at the trial of this matter:

1. Plaintiff's Offer Letter
2. Plaintiff's Employment Application
3. BMC Orientation Checklist
4. BMC's Employee Conduct Policy
5. BMC's Attendance Policy
6. July 13, 2007 Correspondence from BMC to Plaintiff
7. Plaintiff's Job Description
8. Written Warning dated December 11, 2007
9. Performance Review and Development Form signed by Plaintiff on April, 2009
10. Verbal Warning dated February 2, 2009
11. Performance Review Appraisal signed by Plaintiff on May 16, 2011
12. Performance Review Appraisal signed by Plaintiff on May 7, 2012
13. Verbal Warning dated September 28, 2012
14. Written Warning dated April 26, 2013
15. Performance Review Appraisal signed by Plaintiff on May 9, 2013
16. One (1) day Suspension
17. Performance Review Appraisal signed by Plaintiff on May 14, 2014
18. Three (3) Day Unpaid Suspension
19. Performance Review Appraisal signed by Plaintiff on May 23, 2015

20. Five (5) Day Suspension
21. Last Chance Agreement signed by Plaintiff on December 14, 2015
22. Email correspondence dated December 9, 2015 – Unauthorized Break
23. Termination Letter
24. Grievance Form dated March 6, 2014
25. Grievance Form dated September 15, 2014
26. Grievance Form dated September 23, 2015
27. Email dated August 9 – Nereida Gonzalez – Unauthorized Break
28. Email dated August 3, 2015 – Paul Zepeda – Witness statement
29. Chart providing Demographic Information of other EVS employees.

Respectfully submitted,

BOSTON MEDICAL CENTER
By Its Attorneys,

/s/ Jamie L. Kessler_____
Matthew D. Freeman, BBO # 664355
Jamie L. Kessler, BBO # 681867
JACKSON LEWIS P.C.
75 Park Plaza
Boston, MA 02116
(617) 367-0025
matthew.freeman@jacksonlewis.com
jamie.kessler@jacksonlewis.com

Dated: July 1, 2019

## CERTIFICATE OF SERVICE

This hereby certifies that on July 1, 2019 this document, was served upon *pro se* plaintiff, Fanny Guerrero, 505 Columbia Road, Dorchester, MA 02125, by UPS Overnight.

/s/ Jamie L. Kessler_____
Jackson Lewis P.C.

4815-1124-6235, v. 1